8IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| vs. | : Case No. 3:07cr081(1)(3)&(9) |
| | : JUDGE WALTER HERBERT RICE |
| DANIEL GARCIA-GUIA, | : |
| JOSE GARCIA-GUIA, | : |
| and | : |
| RAMIRO ARROYO-SALDANA | : |
| Defendants. | : |

DECISION AND ENTRY OVERRULING IN PART AND OVERRULING, AS MOOT, IN PART MOTIONS TO SUPPRESS WIRETAP EVIDENCE FILED BY DEFENDANT DANIEL GARCIA-GUIA (DOCS. ##322 AND 681); DECISION AND ENTRY OVERRULING, AS MOOT, MOTION TO SUPPRESS WIRETAP EVIDENCE FILED BY DEFENDANT JOSE GARCIA-GUIA (DOC. #377), AND JOINED IN BY DEFENDANT RAMIRO ARROYO-SALDANA (DOC. #381)

Defendants Daniel Garcia-Guia ("Daniel"), Jose Garcia-Guia ("Jose"), Ramiro Arroyo-Saldana ("Ramiro") (collectively "Defendants") and others are charged in the Fourth Superseding Indictment (Doc. #503), with a number of counts relating to the alleged distribution of cocaine. In addition, Daniel is charged with one count of engaging in a continuing criminal enterprise relating to the distribution of that

controlled substance. As part of its investigation into those alleged offenses, the Government obtained authorization from the United States District Courts in El Paso, Texas, and in Dayton to conduct wiretaps on certain telephone numbers.[1] Daniel (Docs. ##322 and 681) and Jose (Doc. #377) have filed motions, requesting that the Court suppress all evidence derived from those wiretaps. Ramiro has joined in the motion filed by Jose. See Notation Entry Sustaining Doc. #381. This Court conducted a six-day oral and evidentiary hearing on those motions, which extended over many months. The parties have filed their post-hearing memoranda. See Docs. ##593, 619, 652 and 668. The Court now rules upon the Motions to Suppress Wiretap Evidence filed by Daniel and Jose and joined in by Ramiro.

As is indicated above, wiretaps were authorized by the United States District Courts in El Paso and in Dayton. With the motions, the Defendants have requested that the Court suppress the evidence obtained as a result of the wiretaps authorized by the United States District Courts in both El Paso and in Dayton. The Government, however, has decided not to introduce recorded telephone conversations obtained from the wiretaps conducted as a result of the authorization obtained from the United States District Court in Dayton. See Doc. #682. The Government has emphasized, however, that it intends to introduce a number of telephone calls recorded as a result of the authorization obtained from the United States District Court in El Paso. Id. at 2. Some of the telephone calls which the Government will seek to introduce were simultaneously recorded, pursuant to the authorization to conduct wiretapping granted by the

---

[1]Judge Thomas Rose authorized the wiretap in Dayton.

United States District Courts in both El Paso and Dayton. However, such simultaneously recorded telephone conversations will be admitted only if lawfully authorized by the United States District Court in El Paso. Given that the Government will not seek to introduce telephone calls recorded as a result of the authorization granted by the United States District Court in Dayton, this Court overrules, as moot, the Motions to Suppress Wiretap Evidence filed by Daniel (Docs. ##322 and 681), as those motions relate to those telephone calls. Parenthetically, Jose and Ramiro have not, in their post-hearing memoranda, addressed the lawfulness of the wiretaps authorized by the United States District Court in El Paso; therefore, the Court overrules as moot Jose's Motion to Suppress Wiretap Evidence (Doc. #377), joined in by Ramiro. Accordingly, the Court turns to the arguments raised by Daniel, who devoted the entirety of his post-hearing memorandum (Doc. #652) to arguing that the Court should suppress the evidence obtained as a result of the wiretap authorized in El Paso. The Court begins its analysis by reviewing the circumstances surrounding that authorized wiretap.

On November 22, 2006, Special Agent Carlos Olivo ("Olivo") of the Drug Enforcement Administration ("DEA") executed an affidavit before Judge Kathleen Cardone of the United States District Court for the Western District of Texas, in El Paso.[2] With that affidavit, Olivo obtained an order from Judge Cardone, authorizing police to wiretap , for a 30-day period, a particular telephone number in El Paso, Texas, referred to as Target Telephone-1 ("TT1").[3] On December 22, 2006, DEA Special Agent Tracey Alexander ("Alexander") executed an affidavit

---

[2]Olivo's affidavit is Government Exhibit 5(a).

[3]Judge Cardone's order is Government Exhibit 5(b).

before Judge Cardone.[4]  With that affidavit, Alexander obtained another order from Judge Cardone, authorizing officers to continue to intercept telephone call on TT1 for another 30-day period.[5]

In that memorandum, Daniel argues that the Court must suppress the evidence obtained as a result of the initial authorization to wiretap TT1, for three reasons, to wit: Olivo's affidavit failed to establish probable cause, as required by the Fourth Amendment; violated the particularity requirement contained in the statute governing wiretaps; and failed to comply with the necessity requirement set forth in that statute.  See Doc. #652 at 1.  In addition, Daniel asserts that this Court must suppress the evidence that was obtained as a result of Judge Cardone's authorization to continue the wiretap of TT1 for an additional 30-day period, arguing that Alexander's affidavit failed to comply with the statutory necessity requirement.  Id.  As a means of analysis, the Court will address Daniel's four propositions in the above order.  However, before engaging in that analysis, the Court will briefly review the legal framework governing wiretaps.

The gathering of evidence through wiretaps and the use of that evidence is governed by Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 82 Stat. 211, 18 U.S.C. § 2510 et seq.  Under a specific part of that statute, 18 U.S.C. § 2518(3), a judge may issue a warrant, authorizing the interception of wire, oral or electronic communications, if he finds that:

---

[4]Alexander's affidavit is Government Exhibit 6(a).

[5]Judge Cardone's order, authorizing the continued interception of telephone calls made on TT1, is Government Exhibit 6(b).

> (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;
> (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;
> (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;
> (d) … there is probable cause for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

This Court's review of those four questions is limited to the four-corners of the affidavit submitted to support the issuance of the warrant to conduct wiretapping. United States v. Nelson-Rodriguez, 319 F.3d 12, 33 n. 3 (1st Cir. 2003); United States v. Milton, 153 F.3d 891, 894 (8th Cir. 1998), cert. denied, 525 U.S. 1165 (1999). If the affidavit does not establish the four factors set forth in § 2518(3), the Court must suppress the fruits of the wiretap. See 18 U.S.C. § 2518(10)(a). In United States v. Giordano, 416 U.S. 505 (1974), the Supreme Court indicated that courts should "require suppression where there is failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures." Id. at 527. The Sixth Circuit has stressed that evidence should not be suppressed as a result of a technical violation of Title III. United States v. Gray, 521 F.3d 514 (6th Cir. 2008).

I.  Probable Cause

Since wiretaps implicate the Fourth Amendment, a showing of probable cause is required for their installation. Katz v. United States, 389 U.S. 347, 353-54 (1967). In United States v. Mares-Martinez, 240 F. Supp.2d 803, 814

(N.D.Ill. 2002), the Court noted that "[t]he standard for probable cause under Title III is identical to that under the Fourth Amendment. E.g., United States v. Leisure, 844 F.2d 1347, 1354 (8th Cir. 1988)." See also, United States v. Talbert, 706 F.2d 464, 467 (4th Cir. 1983); United States v. Fury, 554 F.2d 522, 530 (2d Cir.), cert. denied, 433 U.S. 910 (1977); United States v. Falcone, 505 F.2d 478, 481 (3d Cir. 1974), cert. denied, 420 U.S. 955 (1975). In United States v. Smith, 182 F.3d 473 (6th Cir. 1999), the Sixth Circuit restated certain fundamental principles that a court must apply when a defendant argues that evidence, seized upon the execution of a search warrant, must be suppressed, because the supporting affidavit did not establish the existence of probable cause:

> The Fourth Amendment, which states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation," U.S. CONST. amend. IV, requires that probable cause be determined "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out federal crime." Johnson v. United States, 333 U.S. 10, 14 (1948). In order for a magistrate to be able to perform his official function, the affidavit must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant. Whiteley v. Warden, 401 U.S. 560, 564 (1971). Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). It requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 244 n. 13 (1983). A warrant must be upheld as long as the magistrate had a "substantial basis for … conclud[ing] that a search would uncover evidence of wrongdoing…." Id. at 236. See also United States v. Finch, 998 F.2d 349, 352 (6th Cir. 1993).

Id. at 476-77. In Illinois v. Gates, 462 U.S. 213, 230 (1983), the Supreme Court stressed that the existence of probable cause must be determined from the totality of the circumstances. In Smith, the Sixth Circuit elaborated upon Gates:

> As the Supreme Court indicated in Gates, although "veracity," "reliability," and "basis of knowledge" are highly relevant in assessing the value of an informant's tip, these elements should not be understood as "entirely separate and independent requirements to be rigidly exacted in every case." 462 U.S. at 230. Instead, they should be understood as "closely intertwined issues that may usefully illuminate the commonsense, practical question" of whether an informant's tip establishes probable cause. Id. Therefore, under a "totality of the circumstances" approach, a deficiency in one of these areas "may be compensated for, in determining the overall reliability of [an informant's] tip, by a strong showing as to the other, or by some other indicia of reliability." Id. at 233. The Court in Gates concluded that "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for … conclud[ing]' that probable cause existed." Id. at 238-39. The court must ensure that the magistrate was informed of some of the underlying circumstances from which the informant concluded evidence of a crime is where he claimed it would be found, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was reliable. Aguilar [v. Texas, 378 U.S. 108, 114 (1964)].

182 F.3d at 477-78. See also Gates, 462 U.S. at 238 (noting that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place"). See also, United States v. Laughton, 409 F.3d 744, 747 (6th Cir. 2005). When determining whether Olivo's affidavit established the existence of probable cause, this Court must examine the totality of those circumstances in a "realistic and commonsense fashion." United States v. Van Shutters, 163 F.3d 331, 336 (6th Cir. 1998), cert. denied, 526 U.S. 1077 (1999). Of course, this Court also must afford great deference to the determination of probable cause made by Judge Cardone, who issued the order, authorizing the wiretap of TT1. United States v. Allen, 211 F.3d 970 (6th Cir.) (en banc), cert. denied, 531 U.S.

907 (2000); United States v. Akram, 165 F.3d 452, 456 (6th Cir. 1999). See also, United States v. Graham, 275 F.3d 490, 501 (6th Cir. 2001) (indicating that a magistrate's finding of probable cause will not be set aside, unless it was arbitrary).

In support of his premise that Judge Cardone misfired in finding probable cause, Daniel has presented two sub-arguments, to wit: 1) that the Government violated a provision in the Department of Justice's United States Attorney Criminal Resource Manual; and 2) that certain telephone conversations involving Mario Medina ("Medina") were recorded by a confidential informant in violation of Messiah v. United States, 377 U.S. 201 (1964). The Court addresses those specific arguments in that order, following which it turns to the general question of whether Olivo's affidavit established probable cause, which Daniel did not raise.

First, Daniel argues that the Government violated a provision in the Department of Justice's United States Attorney Criminal Resource Manual ("U.S. Attorney's Manual"), stating that it is preferable that all confidential informants used in affidavits to establish probable cause be qualified under Aguilar v. Texas, 378 U.S. 108 (1964) and Spinelli v. United States, 393 U.S. 419 (1969), rather than under the standards adopted by the Supreme Court in Illinois v. Gates, 462 U.S. 213 (1983). Daniel contends that this provision of the U.S. Attorney's Manual was violated by Olivo's use of a confidential source, CS-1, in his affidavit, since that agent did not testify that the confidential source remained qualified under Aguilar and Spinelli when he provided the information Olivo set forth in his affidavit. This Court cannot agree with Defendant that the asserted violation of the U.S. Attorney's Manual constitutes a reason for suppressing the evidence

obtained as a result of the El Paso wiretaps. The Sixth Circuit has held that the U.S. Attorney's Manual does not provide rights to third-parties which can be enforced in a civil or criminal proceeding. United States v. Myers, 123 F.3d 350, 356 (6th Cir.), cert. denied, 522 U.S. 1020 (1997). Accordingly, the Court rejects Daniel's assertion that the alleged violation of the U.S. Attorney's Manual serves as the basis for suppressing the evidence obtained as a result of the El Paso wiretap.

Second, Daniel argues that certain telephone conversations involving Mario Medina ("Medina") were recorded by a confidential informant in violation of Messiah v. United States, 377 U.S. 201 (1964). Therein, the Supreme Court held that Messiah's Sixth Amendment right to counsel had been violated, because, after he had been indicted, police used his co-defendant to surreptitiously record their conversations (when his (Messiah's) counsel was not present). In his affidavit, Olivo has discussed telephone conversations between Medina and a confidential source which were recorded. Olivo did not indicate therein that Medina had been indicted in a different matter, beforehand.[6] According to Daniel, this Court should suppress the El Paso wiretaps, because Judge Cardone "was in all probability misled on a material fact relevant to a probable cause determination." Doc. #652 at 10. For reasons which follow, this Court concludes that the asserted infringement of Medina's Sixth Amendment rights by the alleged violation of Messiah does not serve as the basis for granting Daniel's request to suppress evidence obtained as a result of the El Paso wiretaps.

---

[6]Olivo's affidavit establishes that Medina was the head of the alleged drug trafficking organization being investigated in El Paso.

- 9 -

The Sixth Amendment right to counsel is personal. United States v. Jones, 44 F.3d 860 (10th Cir. 1995); United States v. Partin, 601 F.2d 1000, 1006 (9th Cir. 1979), cert. denied, 446 U.S. 964 (1980). Therefore, one defendant lacks standing to assert a co-defendant's denial of that right. United States v. Ramirez, 50 Fed. Appx. 257 (6th Cir. 2002) (criminal defendant does not have standing to assert the right of a co-defendant to conflict free representation); United States v. Johnson, 267 F.3d 376 (5th Cir. 2002) (holding that, although denying defendant the right to meet with his counsel during overnight and weekend recesses from the trial violated his Sixth Amendment right to counsel, his co-defendants were without standing to raise that deprivation of the Sixth Amendment right to counsel on appeal); Jones, supra (holding that the defendant was without standing to argue on appeal that his co-defendants had been denied right to counsel by the District Court's decision to temporarily disqualify their counsel); United States v. Sims, 845 F.2d 1564 (11th Cir.) (defendant lacked standing to argue that his co-defendant had been denied Sixth Amendment right to counsel when DEA agents negotiated directly with him, rather than through his counsel), cert. denied, 488 U.S. 957 (1988); Partin, supra. Accordingly, this Court concludes that Daniel is without standing to argue that the Government violated Medina's Sixth Amendment right to counsel under Messiah.[7]

Accordingly, the Court overrules Daniel's Motions to Suppress Wiretap Evidence (Docs. ##322 and 681), to the extent that those motions are predicated

---

[7]Since this Court has concluded that Daniel is without standing to argue that the Government violated Messiah, it is not necessary to address the Government's contention that there was no such violation.

upon the assertion that the Government violated Medina's Sixth Amendment rights, as interpreted by Messiah.

Having rejected Daniel's two specific challenges to Olivo's affidavit, this Court turns to the general question of whether that affidavit establishes probable cause. As an initial matter, it should be noted that Daniel does not argue generally that Olivo's affidavit failed to establish probable cause; rather, he limits his discussion of that topic to the two propositions addressed and rejected above. Indeed, such an argument would have been futile, since Olivo's affidavit contains a detailed description of the investigation into the alleged drug trafficking organization being operated by Medina and his alleged co-conspirators, set forth over 25 pages, including how the investigation began and what was learned during it. See Government's Exhibit 5(a) at ¶¶11-23. For example, Olivo's affidavit includes a description of his participation, as an undercover agent, in the controlled delivery of about 124 kilograms of cocaine to Dayton, during which Medina was observed in Dayton. Olivo also described the delivery of large amounts of currency, the proceeds of transactions in controlled substances, to confederates of Medina, for redelivery to him. Quite simply, the information set forth therein establishes beyond debate the existence of probable cause to believe that Medina and his alleged co-conspirators were committing offenses relating to the possession of cocaine and marijuana, in violation of 21 U.S.C. § 841.

Based upon the foregoing, the Court rejects Daniel's assertion that the evidence seized as a result of the El Paso wiretap must be suppressed, because Olivo's affidavit failed to establish probable cause.

II. Particularity Requirement

Daniel contends that Olivo's affidavit violates the statutory particularity requirement of Title III, set forth in 18 U.S.C. § 2518(4)(a), (b) and (c), which provides:

> (4) Each order authorizing or approving the interception of any wire, oral, or electronic communication under this chapter shall specify--
> (a) the identity of the person, if known, whose communications are to be intercepted;
> (b) the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;
> (c) a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates ….

In United States v. Leisure, 844 F.2d 1347 (8th Cir.), cert. denied, 488 U.S. 932 (1988), the court explained:

> All court orders of electronic surveillance under Title III must include "a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates." 18 U.S.C. § 2518(4)(c). In assessing the affidavit under this standard, we are wary of overly broad or vague descriptions of the communications to be intercepted, yet cognizant of the problem that "the actual content [of the conversation] … cannot be stated since the conversations have not yet taken place at the time the application is made and it is virtually impossible for an applicant to predict exactly what will be said concerning a specific crime." United States v. Tortorello, 480 F.2d 764, 780 (2d Cir.), cert. denied, 414 U.S. 866 (1973).

Id. at 1356-57 (ellipsis and alteration in the original).

Herein, Daniel focuses on § 2518(4)(c), arguing that the particularity requirement was violated by Olivo's affidavit, because that affidavit set forth an overly broad description of the communications to be intercepted. Stated somewhat differently, Daniel contends that "the El Paso wiretap authorized a

- 12 -

fishing expedition." Doc. #652 at 11. For reasons which follow, this Court cannot agree.

The order signed by Judge Cardone, authorizing the interception of wire communications, identified the offenses for which police had probable cause to believe that Medina and his alleged co-conspirators were committing. See Government's Exhibit 5(b) at 2 and 4. Those offenses include possession with intent to distribute heroin, marijuana, cocaine and methamphetamine; the use of a communications facility to commit or to facilitate the commission of a controlled substances offense; money laundering; and offenses relating to the exportation of United States currency from this country. Id. Judge Cardone's order described the communications to be intercepted as concerning the offenses discussed therein. Id. at 4-5. Moreover, that judicial officer's order also identified the types of wire communications officers had probable cause to believe were taking place on the target telephone and that such would include evidence of the following, to wit: the roles of Medina and his co-conspirators in the criminal activity discussed therein; the manner in which those activities were conducted; the distribution and transportation cells being utilized by the participants in the alleged illegal activity; other locations being utilized in furtherance of the alleged illegal activity; and the distribution channels of the controlled substances and the currency realized from their sale. Id. at 3. Bearing in mind that "the actual content [of the conversation] … cannot be stated since the conversations have not yet taken place at the time the application is made and it is virtually impossible for an applicant to predict exactly what will be said concerning a specific crime" (Leisure, 844 F.2d at 1357 (internal quotation marks and citation omitted)), the preceding information set forth

in Judge Cardone's order causes this Court to conclude that the order meets the particularity requirement contained in § 2518(4)(c). Moreover, in <u>United States v. Giacalone</u>, 843 F.2d 470, 481 (6th Cir.), <u>cert</u>. <u>denied</u>, 488 U.S. 910 (1988), the Sixth Circuit held that a description of the "communications to be intercepted in terms of the particular offenses which the government suspects are being, or are about to be, committed" satisfied the particularity requirement set forth in § 2518(4)(c). Judge Cardone's order contains such a description.

Accordingly, this Court rejects Daniel's assertion that it must suppress the evidence obtained as a result of the El Paso wiretaps, because the particularity requirement had been violated.

### III. Necessity Requirement

The necessity requirement is set forth in 18 U.S.C. § 2518(3)(c), which provides:

> (3) Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction), if the judge determines on the basis of the facts submitted by the applicant that–
>     *     *     *
> > (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous ….

<u>See</u> <u>also</u>, 18 U.S.C. § 2518(1)(c) (requiring that an affidavit executed to obtain authorization to conduct wiretapping contain a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why

- 14 -

they reasonably appear to be unlikely to succeed if tried or to be too dangerous").

In United States v. Stewart, 306 F.3d 295 (6th Cir. 2003), cert. denied, 537 U.S. 1138 (2003), the Sixth Circuit discussed the necessity requirement:

> In endeavoring to secure a wiretap warrant, the government need not prove the impossibility of other means of obtaining information. Instead, the necessity provisions merely require that law enforcement officials "give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate." United States v. Lambert, 771 F.2d 83, 91 (6th Cir. 1985). This precise information was provided in the instant case. See United States v. Cooper, 868 F.2d 1505, 1508-09 (6th Cir. 1989) (holding that undercover operations including controlled purchases, consensual telephone monitoring, and physical surveillance established that "normal investigative procedures" had been extensively conducted, and that the requested interception of wire and oral communications was not "employed as the initial step in criminal investigation").
> 
> Furthermore, the mere fact that some investigative techniques were successful in uncovering evidence of wrongdoing does not mandate that a court negate the need for wiretap surveillance. We have previously recognized that "wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation." United States v. Landmesser, 553 F.2d 17, 20 (6th Cir. 1977) (quoting United States v. Steinberg, 525 F.2d 1126, 1130 (2d Cir.1975)).

Id. at 305-06. See also, United States v. Rice, 478 F.3d 704, 709-10 (6th Cir. 2007). Daniel argues that both Olivo's and Alexander's affidavits failed to satisfy the necessity requirement. As a means of analysis, the Court will address the parties' arguments concerning each of those affidavits in the above order.

A. Olivo's Affidavit

In arguing that Olivo's affidavit fails to satisfy the necessity requirement, Daniel contends that Olivo failed to explain adequately therein why certain more traditional investigative techniques, such as the use of cooperating and confidential

witnesses, infiltration by undercover agents, information from pen registers, physical surveillance, investigative grand juries, interviews and asset analysis, were not likely to succeed.[8] This Court cannot agree with Daniel. On the contrary, it concludes that Olivo's affidavit adequately details the investigative techniques that law enforcement had utilized before seeking authorization to conduct wiretapping, and the reasons why those techniques had failed and other techniques were not likely to succeed. See Olivo's Affidavit (Government's Exhibit 5(a)) at ¶¶ 24-51. In sum, this Court finds that Olivo's affidavit demonstrates that the Government gave "serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that [Judge Cardone was] informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate." Stewart, 306 F.3d at 305.

Accordingly, this Court rejects Daniel's assertion that Olivo's affidavit violated the necessity requirement set forth in Title III.

B. Alexander's Affidavit

As is indicated above, Alexander executed an affidavit with which he was able to obtain a 30-day extension from Judge Cardone of the original authorization

---

[8]In support this contention, Daniel also argues that Olivo violated the § 6214.21 of the DEA Agents Manual, by failing to coordinate the efforts of the DEA to investigate Medina's alleged organization with those of other federal law enforcement agencies. As is discussed above in the context of Daniel's assertion that Olivo's affidavit failed to establish probable cause, because of a violation of the U.S. Attorney's Manual, this Court noted that the Manual did not create any private rights. Since Daniel has failed to cite authority in support of the proposition that the DEA Agents' Manual does create such rights, this Court concludes that the asserted violation of that manual by Olivo does not support Daniel's request that the Court suppress the evidence obtained as a result of the El Paso wiretap.

to conduct wiretapping in El Paso. According to Daniel, Alexander violated the necessity requirement of Title III, by failing to set forth whether there were any existing orders, authorizing wiretapping of Medina or other target interceptees.[9] This Court cannot agree with Defendant, since § 2518(3)(c), which contains the necessity requirement, does not require the disclosure of information concerning other extant wiretaps. Therefore, the Court rejects Daniel's contention that Alexander's affidavit violated the necessity requirement.

Based upon the foregoing, the Court overrules the Motions to Suppress Wiretap Evidence (Docs. ##322 and 681) filed by Defendant Daniel Garcia-Guia, as

---

[9]Daniel also argues briefly that evidence obtained as a result of the 30-day extension of the wiretap of TT1 must be suppressed, because Alexander's affidavit failed to establish probable cause. According to Daniel, Alexander "cloned" the affidavit Olivo had submitted to obtain the initial wiretapping authorization, without informing Judge Cardone that his affidavit was not exclusively based upon his own personal knowledge. Daniel contends that Alexander's failure in that regard means that his affidavit did not establish probable cause. It is well-settled in the Sixth Circuit that probable cause is to be determined by the collective knowledge of all officers involved. Thacker v. City of Columbus, 328 F.3d 244, 256-57 (6th Cir. 2003). Thus, the question of whether the arrest of an individual was supported by probable cause is to be based on "the collective knowledge of the police rather than solely from the officer who actually made the arrest," even if the arresting officer is not aware of all facts known by other officers. Collins v. Nagle, 892 F.2d 489, 495 (6th Cir. 1989). Moreover, it is well-recognized that the Rules of Evidence do not apply to affidavits executed to obtain warrants. Consequently, this Court cannot agree with Daniel that Alexander's failure to inform Judge Cardone that he had "cloned" Olivo's affidavit demonstrates that probable cause did not exist.

they relate to the wiretapping of TT1, authorized by the United States District Court in El Paso.

May 12, 2009

                                          /s/ Walter Herbert Rice
                                         WALTER HERBERT RICE, JUDGE
                                         UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.